UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

ROBERT HULVEY,

        Plaintiff,         Case No. 2:08-cv-237

v.         HON. R. ALLAN EDGAR

DANIEL QUIGLEY, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. On October 8, 2008, this Court ordered service of Plaintiff's complaint on Defendants Deputy Warden Daniel Quigley, ADW Unknown Young, Inspector McJouren, and Warden Michael Curley. On December 30, 2008, Plaintiff filed an amended complaint against Defendants Warden Greg McQuiggin, DW John Boynton, AADW John Andrzejak, ARUS Teresa Corey-Spiker, ARUS Scott Bernard, ARUS Todd Menard, RUM Mansfield, Warden Michael Curley, DW Daniel Quigley, ADW James Young, Inspector Majurin, unknown male Security Classification Committee Member, unknown female Security Classification Committee Member, and ADW Sprader.

On February 6, 2009, Defendants Daniel Quigley, James Young, Michael Curley, Donald Majurin, Teresa Corey-Spiker, Todd Menard, Donald Mansfield, John Andrzejak, John Boynton, Gregory McQuiggin and Scott Sprader filed a motion for summary judgment (docket #43)

on the ground that Plaintiff failed to exhaust his available administrative remedies. Defendant Scott Bernard filed a similar motion (docket #52) on February 20, 2009, adopting the motion and brief filed by his co-Defendants. Plaintiff filed a response to the February 6, 2009 motion (docket #55) and affidavit (docket #56, attachment #1) on or about February 23, 2009. Defendants filed a reply to Plaintiff's response (docket #61) on March 12, 2009. Plaintiff filed a surreply to Defendant's reply (docket #63) on March 19, 2009. Upon review, I recommend that Defendants' motions for summary judgment based on Plaintiff's failure to exhaust his available administrative remedies be granted with respect to all Defendants except Defendant James Young.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007).

2

A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Plaintiff is presently incarcerated at the Oaks Correctional Facility in Manistee, Michigan. In his *pro se* complaint, Plaintiff alleges that, while he was housed at the Ojibway Correctional Facility, he sent a "kite" to Defendants Curley, Quigley, and Majurin, stating that he had heard that he was going to be stabbed and wanted protection. Plaintiff states that he did not receive a response to this request, and was attacked on June 25, 2008. A housing unit officer interviewed Plaintiff and refused to provide him with protection status since Plaintiff could not name

3

his attackers. Plaintiff states that he was given gauze and medical tape for his wounds and sent back to his cell. Plaintiff eventually received medical treatment, including stitches. Plaintiff was placed in temporary segregation pursuant to a Notice of Intent to Classify to Segregation, written on June 26, 2008. The Notice was heard on June 30, 2008, by Defendants Quigley and Young. Because Plaintiff was unable to provide information about his attackers, other than the time and place of the attack, he was not transferred to protective segregation. Plaintiff was interviewed by Defendants Quigley, Young and Majurin on July 1and July 11, 2008. At that time, Plaintiff was able to give the name of one attacker and the cell number of another attacker. Plaintiff states that on July 11, 2008, Defendants Quigley and Young informed Plaintiff that they had interviewed the alleged attackers, who denied the incident, and therefore Defendants could not provide Plaintiff with protection status. Plaintiff refused to return to the general population after a direct order to do so, and received a major misconduct ticket as a result. Plaintiff claims that he was not informed of the hearing, so was unable to attend. Plaintiff was subsequently found guilty of the misconduct.

Plaintiff next claims that Defendants Quigley and Young raised his security level to II, with the intent of having him transferred to Newberry, a Level II facility. Plaintiff asserts that this transfer would not protect him, since Newberry and Ojibway often transfer prisoners. Plaintiff was transferred to Newberry on July 17, 2008. On August 26, 2008, "Sgt. McGinn" (Defendant McQuiggin) informed Plaintiff that a "kite" had been received indicating that Plaintiff would be stabbed in the yard that day. Plaintiff told Defendant McQuiggin that he had received threats, but would not identify the individuals who had made the threats. McQuiggin wrote a Notice of Intent to Classify Plaintiff to Segregation. Plaintiff was interviewed by a male and female member of the Security Classification Committee, but did not provide the names of the individuals who had threatened him. Plaintiff alleges that the female officer told him that she could not provide him with

4

protection unless he provided her with names. The female officer told Plaintiff that if he complied, she could ensure that Plaintiff was transferred to another facility. Plaintiff received a ticket for refusing to reenter the general population on August 26, 2008. Plaintiff was then reclassified to security level III and was transferred to Chippewa on August 28, 2008.

Plaintiff states that he was attacked in his cell at Chippewa on October 15, 2008. Defendant Menard interviewed Plaintiff, and stated that he had received several "kites" that Plaintiff was going to be stabbed that week. Plaintiff admitted that he had been attacked, and Menard sent Plaintiff to health services, where he was treated. On October 16, 2008, Plaintiff alleges that Defendants Andrzejak and Mansfield interviewed him, but did not allow him to make a statement. They told Plaintiff that it had been determined that his wounds were self-inflicted. Plaintiff was moved to the level IV unit at Chippewa, where he was still required to pass through the chow hall, where level III inmates worked. Plaintiff was stabbed in the yard on November 9, 2008, and was taken to segregation. Plaintiff asked to see health services, but was not permitted to go. Plaintiff states that no one from health services came to see him.

Plaintiff was interviewed by Defendants Boynton and Andrzejak on November 10, 2008. Plaintiff alleges that he requested to be transferred to a level I facility that does not trade prisoners, but instead was transferred to a level IV facility where prisoners were regularly traded. Plaintiff states that Defendant Corey-Spiker completed a Security Classification Screen-Review form, which led to Plaintiff's transfer to another level IV facility, even though Plaintiff needed protection and Plaintiff's actual confinement level was level I. Plaintiff asserts that Defendants Andrzejak and Boynton signed the forms in order to retaliate against Plaintiff for asserting his constitutional right to be housed in a safe environment. Plaintiff seeks compensatory and punitive damages.

5

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate

6

submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 120 calendar days unless an extension has been approved . . . ." *Id.*

Defendants claim that they are entitled to summary judgment because Plaintiff failed to properly grieve the alleged misconduct. Specifically, Defendants assert that Plaintiff failed to file either a step II or III appeal following the denial of his step I grievance. Therefore, Defendants assert, Plaintiff failed to comply with policy and properly exhaust his administrative remedies. To support this claim, Defendants attach the affidavit of the MDOC Manager of Prisoner Affairs and the results of a search of the records where step III grievances are maintained, which show no results for Plaintiff. (*See* docket #44, attachments #1 and #2.)

Plaintiff responds that he filed his step I grievance on July 11, 2008. This grievance was denied on July 15, 2008, and returned to Plaintiff on July 17, 2008. (*See* docket #56, attachment #2, Plaintiff's exhibit Q.) Following this denial, Plaintiff claims that he sent several "kites" to the Grievance Coordinator, in which he requested a step II grievance form. Plaintiff claims that he received no response to these requests. In order to file within the required time period, Plaintiff states that he filed a step II grievance on a step I form. To support this claim, Plaintiff attaches a step I form dated July 25, 2008, with "Step II Grievance" written across the top. (*See* docket #56, attachment #2, Plaintiff's exhibit R.) Plaintiff claims that he never received a response to his step II grievance. When he requested a step III form from the Grievance Coordinator, he was informed that he could not obtain one unless he could show that he had received a response to his step II grievance appeal. Because Plaintiff was unable to comply with this requirement, he filed a step III grievance on a step I form. To support this claim, Plaintiff attaches a step I form dated August 15, 2008, with "Step III Grievance" written on the top and a description of Plaintiff's inability to obtain a step III form. (*See* docket #56, attachment #2, Plaintiff's exhibit P). Plaintiff claims that he did not receive a response to his step III grievance.

Plaintiff contends that he sent two letters to the MDOC Manager of Prisoner Affairs, and attaches copies of these letters, dated September 4, 2008, and December 4, 2008, as exhibits. (*See* docket #56, attachment #2, Plaintiff's exhibits S and T.) Plaintiff received a letter from the MDOC Manager of Prisoner Affairs dated January 6, 2008 (presumably a typographical error meant to be 2009) informing him that step III grievances could not be filed directly and instructing Plaintiff to file a step I grievance first. (*See* docket #56, attachment #2, Plaintiff's exhibit P.) Therefore, Plaintiff contends that he filed step I, step II, and step III grievances in the only manner available to him, thereby complying with the exhaustion requirement.

As noted above, a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his **available** administrative remedies. *Porter*, 534 U.S. at 532; *Booth*, 532 U.S. at 733 (emphasis added). In the opinion of the undersigned, there is a genuine issue of material fact with regard to whether Plaintiff was prevented from properly filing his step II and step III grievances by being unable to obtain the correct forms, and otherwise took the steps to properly exhaust. Therefore, Defendants' claim that Plaintiff failed to comply with the exhaustion requirement because he did not file a step II or III appeal on the proper form lacks merit.

However, Defendants also claim that they are entitled to summary judgment because Plaintiff failed to name all but one of the Defendants in his filed step I grievance. A prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the problems so that the prison has a chance to address the claims before they reach federal court. *Bell v. Konteh*, 450 F.3d 651, 653 (6th Cir. 2006); *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *accord Harbin-Bey v. Rutter*, 420 F.3d 571, 581 (6th Cir. 2005); *Burton v. Jones*, 321 F.2d 569, 574-75 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance."). An examination of Plaintiff's step I grievance form reveals that only Defendant James Young is named. In that grievance, Plaintiff complains that Defendant Young improperly denied his request for protective custody on July 1, 2008 and again on July 11, 2008. In Plaintiff's attempted step II and step III appeals, he fails to name any additional Defendants. Plaintiff's discussion of "staff" within his grievance forms is not sufficient to constitute the naming of the remaining Defendants. Therefore, the named Defendants, with the exception of Defendant James Young, are entitled to summary judgment due to Plaintiff's failure to exhaust his administrative remedies.

9

For the foregoing reasons, I recommend that Defendants' motions for summary judgment (docket #43 and #52) be granted with regard to all of the named Defendants in this case, with the exception of Defendant James Young.

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: July 10, 2009

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).